# Etter, Appellant, *v.* St. Paul Fire & Marine Insurance Company.

*Insurance—Fire insurance—Executory contract—Evidence.*

1. An executory contract of fire insurance in the future may be valid and binding, but the testimony to establish it must show clearly the subject-matter of the insurance, the amount and elements of the risk, including its duration in point of time, and extent in point of hazard assumed, the rate of premium, and generally all the circumstances which are peculiar to the contract and distinguish it from every other, so that nothing remains to be done but to fill up the policy and deliver it, on the one hand, and pay the premium, on the other.

2. Where a person takes out a policy of fire insurance for five years, and asks the agent to renew the policy when it falls due, and keep the insurance alive, and the agent promised to do so, but fails to perform his promise, and nothing is said at the time as to the length, or term of the new insurance, or the rate or amount to be paid, or the property covered, the insurance company cannot be held as on a binding contract.

Argued March 10, 1913.   Appeal, No. 1, March T., 1912, by plaintiff, from order of C. P. Dauphin Co.,

Sept. T., 1910, No. 655, refusing to take off nonsuit in case of A. L. Etter v. St. Paul Fire & Marine Insurance Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Assumpsit upon a contract of fire insurance. Before McCARROLL, J.

At the trial the court entered a compulsory non-suit which it subsequently refused to take off, McCARROLL, J., filing an opinion in which he stated the facts to be as follows:

The plaintiff claims under an alleged parol contract made with the agent of the defendant company reinsuring his personal property in the amount of $750 for five years from March 25, 1910.

On December 21, 1904, the plaintiff obtained through defendant's agent its policy of insurance, insuring his personal property in the sum of $500 for the term of five years. On March 23, 1905, the plaintiff desiring a larger amount of insurance upon the same personal property, applied to defendant's agent and obtained its policy of insurance No. 10095 insuring the said property in the sum of $750 for the term of five years.

Plaintiff testified that at the time he took out policy No. 10095 on March 25, 1905, he said to defendant's agent, Mr. Etter,—"I prefer to have it in the St. Paul Company, and asked him whether he could place a second policy in the company, and he said, certainly he could. We met in front of the house, walked into the house through the yard and Mr. Etter was perfectly satisfied apparently with the amount of furniture I had, and I asked him the rate. He quoted me a rate for three years and a rate for five years, which was $22.50, and I told him to write a policy for five years for $750. He brought me the policy a couple days later to my office and I paid him and said to him at that time, now, Mr. Etter, will you renew this policy

when it falls due and keep the insurance alive?  He said that he would."

He further testified that in December, 1909, when he renewed the first policy for $500, that he spoke to Mr, Etter, the agent, in regard to the renewal of the $750 policy, and that Etter said,—"He would renew this policy.  I was very anxious to have him renew this insurance in the same company, because I had a special reason for that, I had two policies in that company, the first for $500, taken out in 1904, which expired in 1909.  When he brought the renewal for five years of the $500 policy, he brought it a few days I think before the time was up."

Plaintiff also stated that he had the same arrangement with the agent in regard to the renewal of the $500 policy which he had with respect to the renewal of the policy for $750, and he testified as to what occurred when the renewal of the $500 policy was delivered to him as follows, to wit: "Yes, I knew the $750 policy would be due some time the following summer, and I called his attention to it and asked him whether he would renew it, and he said he would.  I was not sure just what month it was due.  My recollection was that it fell due in May, but of course after the fire I discovered it was March; but I seldom referred to my policies.  I didn't know when it fell due, but I knew it was the following year."

The plaintiff also testified that after the fire of April 9, 1910, he had a conversation with Mr. Etter, the agent of the defendant, as follows, to wit: "After the fire when I discovered that my policy had run out on March 25, I went to Mr. Etter's office.  This was Wednesday after the ninth.  I met Mr. Etter on the street, I asked him about the policy and said I suppose you have renewed it. I thought he had renewed it and had it at his office and failed to deliver it.  He said, no, I didn't renew it, I was sick during the month of March and was not able to attend to business and looking over my expiration

book, I think he called it, I simply overlooked it.  I said, don't you remember that you agreed when this policy was written that you would renew it and keep me insured, and he said, yes, I know that I did, but I was sick and I simply overlooked it.  He expressed regrets.  We walked to his office and of course talked a little bit further about the matter and I went home."

The plaintiff also testified that after the fire he had a conversation with Mr. Etter, the agent of the defendant company, in the presence of Mr. H. B. Fox, whom he called in for the purpose of hearing what Mr. Etter had to say.  The conversation was as follows: "I said, Mr. Etter, referring to that insurance policy which is in dispute, you know that you promised to renew the policy and keep me insured.  He admitted that he did, and then I said to him, suppose this fire had not occurred and you had discovered fifteen days after the fire that the renewal had been overlooked, would you have renewed the policy and brought it down?  He said certainly I would, and I said, would you have said anything about overlooking the renewal for fifteen days?  He said, no, I wouldn't.  I said, suppose I had discovered it and called your attention to it, what would you have said?  He said, I would have explained to you how it happened.  I said, in case you had renewed this policy and brought it down, wouldn't you have dated it March 25?  Oh, he said, certainly I would."

Etter is appointed agent at Middletown for the defendant company "with full power to receive proposals for insurance against loss and damage by fire in Middletown, Pa., and vicinity; to fix rates of premiums, to receive money for the same and to countersign, issue, renew and consent to the transfer of polices of insurance and to make indorsements thereon or to vary the risks signed by the president and secretary of the said St. Paul Fire and Marine Insurance Company, subject to the rules and regulations of the said company, and to such instructions as from time to time may be given by its officers."

In the Benner case (Benner v. Fire Assn., 229 Pa. 75) the Supreme Court held at page 84, as follows, viz: "This commission cannot be construed as conferring upon the agent authority to bind and obligate his company on the unusual contract here sought to be established."

In the present case plaintiff does not seem to have understood when he renewed the $500 policy in December, 1909, that any valid arrangement had actually been made with Etter, the agent for the defendant, renewing and actually continuing in force the policy expiring March 25, 1910, because he then inquired whether or not Etter would renew that policy upon its expiration, to which Etter replied that he would renew it. Nothing was done by the agent in December of 1909, actually renewing and continuing in force the policy for $750, expiring March 25, 1910. At the most he said he would renew the policy at its expiration. The plaintiff was undoubtedly anxious to have his property kept insured, and Mr. Etter, who was in the general insurance business, was anxious to write insurance and secure his commission upon the premiums. Etter seems to have undertaken to renew the plaintiff's insurance, and the plaintiff apparently constituted him his own agent to keep the insurance upon his property alive. There is no testimony which indicates that the plaintiff and the agent of the defendant by any words in præsenti renewed the insurance contract in question here. Both expected that it would be renewed. Each understood that something further was to be done than had been done at the time of the conversation of March 25, 1905, and December 23, 1909. It was not actually renewed at either of these dates. No amount, or term, or rate was mentioned. Both evidently expected and intended that something further was to be done before the insurance was continued. The plaintiff did not take his policy at its expiration on March 25, 1910, to the agent and request that his agreement with respect to the renewal should be consummated. The agent of the de-

fendant, according to the testimony, was sick, and gave the matter no attention. The things which both parties understood should be done were not done, and the result, as we view it, is that the insurance effected by the defendant expired on March 25, 1910, and was not in force at the date of the fire on April 9, 1910. Before an insurance company can properly be held to be bound by a renewal of an insurance contract or by an agreement that it shall be renewed or continued in force for another term than that mentioned in an original policy, full and specific authority should be shown to have been given the agent of the company for the making of such an arrangement. It is unfortunate that the plaintiff did not attend to securing the renewal of this particular policy of insurance, but there is nothing in the case which warrants us in holding, nor a jury in finding, that the insurance contract was ever actually extended, or supposed by the plaintiff and the agent of the company to have been actually extended beyond the term in the original policy.

We are therefore constrained to refuse the motion to take off the compulsory nonsuit. [1]

*Error assigned* was refusal to take off nonsuit.

*J. R. Geyer,* of *Fox & Geyer,* with him *John C. Nissley,* for appellant.—The agent had authority to renew the insurance: Imperial Fire Ins. Co. v. Dunham, 117 Pa. 460; Burson v. Fire Assn., 136 Pa. 267; McCullough v. Ins. Co., 2 Pa. Superior Ct. 233.

A parol executory contract of insurance is valid: Keystone Mattress & Spring Bed Co. v. Pittsburg Underwriters, 21 Pa. Superior Ct. 38; Benner v. Fire Assn., 229 Pa. 75; King v. Ins. Co., 195 Mo. 290.

*Thomas O. Pierce,* with him *William M. Hargets,* for appellee.—This case is ruled by Benner v. Fire Assn. of Philadelphia, 229 Pa. 75.

OPINION BY HEAD, J., July 16, 1913:

To enable the plaintiff to make out a prima facie case it was necessary his proof should tend to establish that at the time of his fire loss there existed a valid and binding contract of insurance with the defendant company. If the existence of such contract was proven by evidence, its validity would not be destroyed merely because it was made in parol. This is clearly pointed out in Benner v. Fire Association, 229 Pa. 75. After a review of a great number of authorities in many jurisdictions, Mr. Justice MOSCHZISKER, speaking for the court, declares that the weight of authority supports the further conclusion that an executory contract of insurance in the future may be valid and binding. But it is equally clear that where a plaintiff is obliged to rely upon a contract of that character, his testimony must be sufficiently precise and definite to show that the minds of the parties had met on every essential element of such contract. "The testimony must make clear the subject-matter of insurance, the amount and elements of the risk, including its duration in point of time and extent in point of hazard assumed, the rate of premium, and generally all the circumstances which are peculiar to the contract and distinguish it from every other so that nothing remains to be done but to fill up the policy and deliver it, on the one hand, and pay the premium on the other." The plaintiff in that case relied upon testimony not to be distinguished in any essential particular from that on which the present plaintiff rests his case.

Five years and some months before the happening of the fire in this case the plaintiff had secured a policy from the defendant company insuring certain personal property against loss by fire for a period of five years from its date. That policy had by its terms expired some months before the loss occurred. The plaintiff had no policy at the date of the fire and his proof showed no then subsisting contract of insurance made by a duly authorized agent. The most he could prove was that at the time he received the policy

stated the agent of the defendant company told him that at the expiration thereof he would have the company renew the contract of insurance evidenced thereby. There is nothing in the evidence to show that the renewal contract which the agent promised to make should be for any stated length of time. No rate or amount of premium was agreed upon. It could not then be told whether the plaintiff, five years thereafter, would be in possession of the same personal property, nor could its value or conditions be ascertained so long in advance. It is not shown by any testimony that the agent ever did renew the insurance or create a new contract for his company, or that he ever told the plaintiff that he had done so, or that the property of the plaintiff was covered by insurance at a time after the expiration of the policy he had taken. The plaintiff himself shows by his own testimony that, in point of fact, the agent never had made a new contract of insurance, in parol or otherwise, and that he excused his failure to make good his promise by the fact that he had been sick and overlooked it. Had the plaintiff, at the expiration of his five-year policy, determined to insure in some other company, we can see no foundation whatever in the testimony before us to support the proposition, that the defendant could have tendered a policy and sued for and recovered some premium, on the theory that it had five years previously entered into a binding contract with the plaintiff for further insurance.

In this respect we think the case before us is practically on all fours with Benner v. Fire Association, supra, and we are but applying its principle in holding that the learned judge below was right in entering a compulsory nonsuit and thereafter refusing to take it off. "In the present case the testimony to establish the alleged contract is too vague. Although it is repeated in several different forms upon the notes, we have stated it most strongly for the plaintiff. And yet what have we? A conversation between the plaintiff and the agent of the defendant company about renewing another insurance, in which the former said to

the latter, 'Don't forget the barn. Renew the barn as quick as that comes due,' and received the reply, 'I will attend to it, you don't need to worry.' How can we say from this with any safety that the defendant company thereby agreed upon an insurance in any fixed amount for any fixed term either in the present or future. The very words used by the agent indicate an intent to attend to something in the future for the plaintiff, rather than a then present presumption of an obligation binding upon his company. The old policy on the barn was in the possession of the plaintiff, so he as well as Hoch (the agent) had means of information as to the date of its expiration. The whole surroundings negative the idea of a serious contract being made: the conversation consisted of a few words on the street; no money was passed, no memorandum was made, and no definite promise given on either side."

In the present case the plaintiff testifies that when he took out his policy more than five years before the fire, he said to the agent, "Now, Mr. Etter, will you renew this policy when it falls due and keep the insurance alive? He said that he would." At a later period, whilst the policy was still in force, but the end of the period covered by it was approaching, the plaintiff further says, "I called his attention to it and asked him whether he would renew it and he said that he would."

In both cases the evidence disclosed no more than a naked promise by the agent that he would, at some future time, enter into a contract of insurance for his company. This is not the equivalent of a present contract of insurance to become effective at a fixed future date. The learned court below was therefore right in refusing to take off the nonsuit.

Judgment affirmed.